UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:07-CR-93 |
| | ) | COLLIER/CARTER |
| SEKOU FOFANA | ) | |

REPORT AND RECOMMENDATION

I. Introduction

The defendant's Motion to Suppress (Doc. 39) is before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). Defendant Sekou Fofana moves to suppress evidence found during a police search of his vehicle on the ground that the search was conducted during an illegal detention in violation of the Fourth Amendment following a traffic stop. For the reasons stated herein, it is RECOMMENDED that the defendant's motion to suppress be DENIED.

II. Relevant Facts

A hearing was held on the defendant's motion to suppress on Thursday, October 25, 2007. Tennessee Highway Patrol State Trooper Gray Gibson was the only witness to testify. Officer Gibson has been a state trooper for ten years. On July 2, 2007, he was stationed in his parked patrol car at the 21-mile marker facing north-bound traffic on I-75 just past Exit 20 to Cleveland, Tennessee. His radar gun registered the defendant's blue, 2006 four-door sedan Chrysler traveling 90 mph in a 60 mph zone. Officer Gibson caught up with the defendant at the 24-mile marker on I-75, he activated his blue lights, and pulled the defendant over. It was 4:56 p.m. When Officer Gibson activated his blue lights, his dash camera was also activated. Officer Gibson was also wearing a microphone which recorded most of the traffic stop as well.

Officer Gibson walked up to the right passenger window, which was down, and spoke to the defendant, who was driving, through the passenger's window. There were four black males in the car. The car had Pennsylvania plates. All the men looked very nervous. Officer Gibson told the defendant he had been driving 90 mph in a construction zone with a 60 mph speed limit. He asked for the defendant's driver's license and vehicle registration. The defendant indicated the car was a rental car, and Officer Gibson asked to see the rental papers. Defendant said they were from Delaware, and he gave Officer Gibson a New York driver's license and the rental agreement. Officer Gibson read the rental agreement which provided that the vehicle could be taken only to Pennsylvania, Delaware, Maryland, New Jersey, and Virginia. At 4:58 pm, Officer Gibson asked where they had been and whether they had relatives in Tennessee. Someone in the car answered "Knoxville." At 4:59, Officer Gibson asked, "Where are ya'll traveling to?" Defendant responded, "Tennessee." Officer Gibson then asked the defendant to step out and come to the back of the car. Officer Gibson then asked him, "Where ya'll been at?" The defendant responded, "Uh . . we've just been to Tennessee, here." Officer Gibson asked "Where at in Tennessee?" The defendant responded, "I am from New York, I don't know." Officer Gibson asked, "How long have you been driving today?" The defendant responded he had been driving for three hours.

Officer Gibson testified at the suppression hearing that he asked the driver to get out of the vehicle because he likes to talk to people one-on-one and it was difficult to hear with the noise of the trucks on the road. The fact that the rental agreement did not list Tennessee as a state where the defendant could take the vehicle made Officer Gibson suspicious. Officer Gibson asked something to the effect of "What was the name of the city where you have been? Was it

Chattanooga?" It appears the defendant answered "yes," but the rest of his answer was difficult to hear due to the noise of trucks in the background. Officer Gibson asked if the defendant had relatives in Tennessee. The defendant indicated someone else in the car had relatives in Tennessee. Officer Gibson asked who the two men were in the back of the vehicle, what was their nationality, did they have permanent residency, and what was their vocation. The defendant answered something to the effect of "my father, African nationality with permanent residency, and he drives a taxi." (Again, it is difficult to hear the complete answer due to the background noise of trucks on the highway). At this point, Officer Gibson asked if they had anything illegal, like drugs, in the car. The defendant stated "no." Officer Gibson said, "You don't know what city you've come from?" The defendant indicated they had stayed in a Holiday Inn the night before but he couldn't say what city. His answers to some of Officer Gibson's questions are difficult to discern. At 5:01 p.m., Officer Gibson again asked if there was anything illegal in the car. The response was "no." At 5:02 p.m., Officer Gibson again asked if there was anything illegal in the car and the response was again, "no." Officer Gibson told the defendant to return to his vehicle. At 5:02 p.m., Officer Gibson went to his vehicle and called dispatch to run a license and tag check and to prepare the speeding ticket which he intended to issue to the defendant. The report took some time but eventually came back showing a valid driver's license. At 5:11 p.m, after the license and tag check was finished, Officer Gibson exited his vehicle and walked to the passenger's side of the defendant's vehicle. Officer Gibson, speaking through the open passenger's side window, stated, "you are not supposed to be in Tennessee according to the rental agreement." He asked, "Where did you stay last night?" Someone in the car responded, "Knoxville." Officer Gibson read the rental agreement to the them, and the defendant said that he

didn't know they were not supposed to take the car outside of certain states. At 5:12 p.m., Officer Gibson again asked the defendant to exit the car. Officer Gibson told defendant to watch his speed and gave him a ticket which he signed.

At this point, the tape begins to skip in five second intervals. At the suppression hearing, Officer Gibson explained that this skipping means the tape has four minutes left. Officer Gibson again asked the defendant where he went from Knoxville and where he had been staying. He again asked if there was any contraband or anything illegal in the vehicle. He asked how long the defendant had been in the United States. Much of the conversation is difficult to discern because of the noise of the trucks on the highway and the skipping tape, however, Officer Gibson testified at the suppression hearing that the defendant could not say where he had been traveling that day or spent the previous night. At 5:16 p.m., Officer Gibson asked the defendant for consent to search the vehicle, and the defendant agreed. At this point, another officer had arrived. Officer Gibson went to the passengers in the vehicle and explained that they were trying to establish where they had been the night before. He asked them to exit the vehicle; then he proceeded to search the car. At the hearing, Officer Gibson testified he did not return the license and rental agreement immediately after the defendant signed the ticket, and he still had those items in his possession when he asked the defendant for consent to search the car. At 5:20 p.m., Officer Gibson began a search of the vehicle. At 5:22 p.m, Officer Gibson found items related to "black money," in the trunk.

### III. Analysis

The defendant does not contest that the initial stop of his vehicle was valid under Fourth Amendment standards. Rather, he contends that once he signed the speeding ticket, the purpose

of the traffic stop was completed and his continued detention by Officer Gibson constituted an illegal detention under the Fourth Amendment. The government argues that the defendant was free to leave after the speeding ticket was issued and the contact between the defendant and Officer Gibson after the ticket was issued was merely a consensual encounter during which defendant gave consent to search the car.

Police may detain a person based on probable cause to believe that person has violated a traffic law. *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) (so long as the officer has probable cause to believe that a traffic violation has occurred, the resultant stop is not unlawful and does not violate the Fourth Amendment); *United States v. Ferguson*, 8 F. 3d 385, 391 (6th Cir. 1993) (A traffic stop is reasonable if there is probable cause to believe a traffic violation occurred and what else the officer suspected about the driver is irrelevant). "A traffic stop is analogous to a "Terry stop" in that, following the initial stop, the subsequent detention cannot be excessively intrusive and must be reasonably related in time to the investigation." *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999); s*ee also*, *United States v. Wilson,* \_\_F.3d\_\_, 2007 WL 3131682, *3 (6th Cir. October 29, 2007) ("An ordinary traffic stop is like an investigative detention, the scope of which is governed by *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] principles") (brackets added) (quoting *United States v. Perez,* 440 F.3d 363, 370 (6th Cir.2006)). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Perez,* 440 F.3d 363, 372 (6th Cir.2006) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "The investigative means used should be the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time." *Perez*, 440 F.3d at 372 (citing *Royer*, 460 U.S. at 500).

Once the purpose of the traffic stop is completed, the officer may not continue to detain the vehicle or its occupants unless, during the stop, further information arises to support reasonable suspicion sufficient to justify continued detention. *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995); *Perez*, 440 F.3d at 370.

Defendant first argues that he was detained for an unreasonable amount of time during the traffic stop itself thereby violating the Fourth Amendment. About three minutes expired from the time defendant was initially stopped until Officer Gibson returned to his vehicle to ask the dispatcher to run a license and tag check. The report took about nine minutes. Officer Gibson took about one more minute to ask the defendant and the passengers some additional questions concerning their travel itinerary and then he issued the defendant the speeding ticket. From the time the defendant was stopped until he was issued the ticket approximately thirteen minutes expired. During this time, Officer Gibson was engaged in activities which are a permissible part of a traffic stop. Asking for identification and asking questions about one's itinerary and purpose for traveling are a reasonable component of a traffic stop. *United States v. Ellis*, 497 F.3d 606, 613-14 (6th Cir. 2007); *United States v. Hill*, 195 F.3d 258, 268 (6th Cir. 1999) (*see also* cases cited therein). Asking dispatch to check for outstanding warrants on a driver is another reasonable component of a traffic stop. *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999); *United States v. Martinez*, 356 F. Supp.2d 856, 863 (M.D. Tenn. 2005). Police may also lawfully ask for consent to search and whether the driver possesses contraband during the course of a traffic stop. *See United States v. Palomino*, 100 F.3d 446, 449-50 (6th Cir. 1996); *United States v. Martinez*, 356 F. Supp.2d 856, 863 (M.D. Tenn 2005).

I therefore conclude the defendant was not detained for an unreasonable amount of time during the course of the traffic stop.

Defendant argues that once he signed the speeding ticket, the traffic stop was over, but Officer Gibson nevertheless continued to detain him thereby violating the Fourth Amendment. "A seizure, within the meaning of the fourth amendment, occurs only when a reasonable person, in view of the circumstances surrounding the encounter with law enforcement officials, believes he is not free to leave." *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)), *see also United States v. Orsolini*, 300 F.3d 724, 729 (6th Cir. 2002) (same). The government argues that after the defendant signed the speeding ticket, he was free to go. However, Officer Gibson still possessed the defendant's driver's license and rental agreement, and it is not likely that the defendant would have driven off in his vehicle without his license and the rental agreement. I conclude that a reasonable person under the same circumstances would have not felt free to leave at that time, and thus Officer Gibson continued to detain the defendant even after the defendant signed his speeding ticket. Therefore, we are left with the question of whether the defendant's continued detention after the traffic stop was completed violated the Fourth Amendment.

The defendant asserts his case is "identical" to *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995). In *Mesa*, the defendant, Gina Mesa, was stopped for speeding on the highway. Mesa's sister and two children were also in the vehicle. Mesa and her sister appeared nervous. Because Mesa's driver's license was in the trunk of her car, Mesa exited the vehicle to retrieve it. The officer then directed her to sit in the back of his police car. He asked her a number of questions about where she was going, her age, and her license. Mesa said they were going to

visit her grandfather in Nashville; he was not feeling well, and had had a stroke. The officer then left Mesa in the patrol car and went to the other vehicle where Mesa's sister was and asked her about their destination. The sister said they were going to Nashville to see her grandfather. When he asked if anything was wrong with the grandfather, the sister said, "He's just old." The officer asked if he'd had a heart attack or anything. The sister said he had not. The officer then returned to his patrol car and asked Mesa what was wrong with her grandfather and she said, "he's not feeling good." The officer then wrote a warning citation, and had Mesa sign it. He did not, however, allow Mesa to leave the police car and she could not open the door from the inside. The officer then proceeded to ask Mesa if she had any drugs or pistols in the car and if he could look in her car. The defendant consented. The officer then walked a drug dog around the car, but the dog did not alert. Undeterred, the officer searched the interior of the car, under the car, and in the trunk. Mesa then indicated she wished to leave but was not allowed to do so. The officer found a partition in the trunk, opened it, and found cocaine and two firearms inside.

The Sixth Circuit held the search was the product of an illegal detention because Mesa was detained after the traffic stop was completed without the necessary reasonable suspicion to justify further detention. *Id.* at 162-63. The continued detention was based in part on alleged discrepancies between the sister and Mesa regarding their grandfather's health. The Sixth Circuit dismissed this reason stating, "the defendant saying her grandfather had a stroke and her sister's replying in the negative to a question as to whether he had had a heart attack, is simply not a discrepancy sufficient to generate suspicion in the mind of a reasonable police officer." *Id.* at 162. This conclusion left the only basis for the continued detention being the nervousness of

8

Mesa and her sister which the Court held was not alone sufficient to generate the requisite reasonable suspicion. *Id.* at 162-63.

I do not find this case "identical" to *Mesa*. In the instance case, before Officer Gibson issued the speeding ticket, he asked a series of questions concerning where the defendant and his companions had been, where they were going, where they had stayed last night, and how long they had been traveling that day. All of these questions are an appropriate component of a traffic stop. Someone in the car indicated they had relatives in Knoxville. The defendant himself stated they were going to Tennessee and they were traveling just in Tennessee, but he couldn't say where they had stayed last night or where they had been earlier that day. Later in the stop, before the speeding ticket was issued, one of the passengers stated they had spent the night in Knoxville. The defendant himself told Officer Gibson they had been traveling three hours. It is unremarkable for two sisters to be somewhat confused regarding the exact cause of their grandfather's poor health. On the other hand, it simply makes no sense that the four men would stay in Knoxville the night before, travel for three hours, and then travel to Knoxville again but the driver could not say where they had been during all this travel or where they had spent the night. As Officer Gibson testified at the suppression hearing, the defendant's and passengers' answers to his questions made him very suspicious that something else of a criminal nature was going on, especially when coupled with the fact that the defendant had taken the vehicle far outside the travel zone permitted by his rental agreement, they appeared very nervous, and they were driving a rental car, a means of transportation often used by drug traffickers.

In determining whether reasonable suspicion existed to continue the stop beyond its original purposes,

> [the Court must] determine whether an officer formed the requisite reasonable, articulable suspicion during a traffic stop under a "totality of the circumstances" analysis. See United States v. Erwin, 155 F.3d 818, 822 (6th Cir.1998) (en banc), cert. denied, 525 U.S. 1123, 119 S.Ct. 906, 142 L.Ed.2d 904 (1999). This means that we must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately. See United States v. Sokolow, 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). "Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person ... of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The evidence offered as grounds for reasonable suspicion is to be viewed using a common sense approach, as understood by those in the field of law enforcement. See Cortez, 449 U.S. at 417-18, 101 S.Ct. 690; Hill, 195 F.3d at 272.

United States v. Smith, 263 F.3d 571, 588 (6th Cir. 2001) (brackets added).

Using a common sense approach, and considering all the circumstances as a whole, it was reasonable for Officer Gibson to suspect other criminal activity was afoot and to detain the defendant and the passengers for a brief period of time to investigate further.[1] Officer Gibson

---

[1]The government argues that the rule articulated in *Mesa*, *i.e.*, absent the development of reasonable suspicion during the traffic stop police cannot legally continue to detain the driver and passengers after the traffic stop is completed, is no longer good law in the Sixth Circuit. According to the government, reasonable suspicion is not necessary to continue a detention after a traffic stop is completed, provided the detention is reasonable under the particular facts of the case. The Sixth Circuit itself seems to be somewhat conflicted over whether *Mesa* remains intact. *See e.g.*, United States v. Burton, 334 F.3d 514, 517 (6th Cir. 2003) ( *Mesa* no longer accurately represents the law, and, as held by the Supreme Court in Ohio v. Robinette, 519 U.S. 33 (1996), the Fourth Amendment requires only "that the detention and question be reasonable under the particular facts of the case"); *cf*, United States v. Richardson, 385 F.3d 625, 629 (6th Cir. 2004) (citing *Mesa* and holding once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have reasonable suspicion that criminal activity was afoot)) United States v. Erwin, 155 F.3d 818, 822 (6th Cir. 1998) (*en banc*) (same); United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999) (same). Nevertheless, it is unnecessary to address this argument since I conclude that reasonable suspicion did exist to prolong the detention for a short period of time after the traffic stop was completed.

detained the defendant for only four more minutes before defendant gave his consent to search the vehicle. During this time, the defendant was standing behind his vehicle on the side of the road talking with Officer Gibson. He was not physically restrained, and the conversation was calm and polite. I therefore conclude that the length and means of the continued detention did not exceed its proper scope under the Fourth Amendment. In summation, because the defendant gave his consent while legally detained, the defendant's asserted basis for suppression, *i.e.*, that the consent and resulting search were tainted by an illegal detention, fails and defendant's motion to suppress should be denied.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED that defendant's motion to suppress (Doc. 39) be DENIED.[2]

Dated: January 4, 2008          s/William B. Mitchell Carter
                                UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).